In the Matter of JOSEPH F. DE COURSEY, Petitioner, against JOHN F. O'CONNELL et al., Constituting the New York State Liquor Authority, Respondents.

First Department, March 3, 1953.

*David O. Kuh* for petitioner.

*Robert W. Corcoran* of counsel (*John Murphy* with him on the brief; *Alvin McKinley Sylvester, Counsel, State Liquor Authority*, attorney), for respondents.

VAN VOORHIS, J. Nine bottles of Scotch whisky were taken from petitioner's licensed premises by agents of the Alcohol and Tobacco Division of the United States Treasury Department, who came to verify petitioner's Federal floor stock tax return. His return was found to be correct, nor were any Federal charges preferred against him. The chemist, however, of the Federal laboratory, testified that he made analyses which showed that seven of these bottles contained Scotch whisky of a cheaper brand than was indicated by the labels. This evidence was turned over to the State Liquor Authority, upon the basis whereof petitioner's license has been suspended.

Comment would be unnecessary except for the important objection urged by petitioner that, when these bottles were seized, his demand was refused that samples be left with him in order that he might have them analyzed by his own chemist. That is the procedure provided by statute in the case of samples of drugs taken from pharmacists (Education Law, § 6825), of milk taken from producers or dairymen (Agriculture and Markets Law, § 51), and in the case of seeds (Agriculture and Markets Law, § 134). The former section 45 of the Public Health Law, from which these provisions were, in substance, derived, formerly imposed a $50 penalty upon State inspectors for each and every violation of the requirement that duplicate samples be left with the producer or processor. In *People* v. *Bowen* (182 N. Y. 1, 9) the Court of Appeals, per VANN, J., said that the purpose of such statutes " obviously was to guard against mistake or fraud by enabling the owner to have an analysis made for himself."

Although these are specific statutory provisions, all of them emanate from a public policy demanding essential fairness to the citizen not inconsistent with the exercise of the police power. It might well be doubted whether, where the goods are not contraband, the constitutional limitation against "unreasonable" searches and seizures is not transcended by making a seizure under circumstances which leave the citizen entirely at the mercy of a Government agent, if the public morals, health, safety, and general welfare could be as effectively served by making the seizure according to a procedure which would leave to the citizen an opportunity to have an analysis made for himself. The demands of public policy in the case of intoxicating liquor can hardly be more insistent than where misbranding, substitution or adulteration of drugs is involved by pharmacists, yet there the mandate to leave a sealed duplicate sample with the pharmacist is specific and absolute (Education Law, § 6825).

A function of the courts is to weigh the probative force of evidence, and, apart from specific statute (although in accordance with general public policy as indicated by these various acts of the Legislature), it would appear to be within the province of courts to hold that evidence has little, if any, probative force, which has been obtained by Government analysis of samples, taken without affording any corresponding opportunity for analysis to the licensee, where such opportunity could be given without interference with the exercise of the police power. This is especially true in the light of the cherished constitutional right of the citizen to be free from unreasonable search and seizure. Confronted by the insistent demands of Government, many of which have to be recognized as legitimate, it is easy to allow our liberties to be whittled away by omitting to watch specific situations, which, considered by themselves, sometimes appear to be trivial, but that, taken together, add up to the total of our constitutional rights, privileges and immunities as private citizens.

This is not a case where inspectors have taken samples from licensed premises, leaving the balance of the liquor in the possession of the licensee. Here, the agents took the entire bottles, leaving with the licensee no samples of their contents.

The Federal agents testified that the bottles found to have been misbranded were sealed in petitioner's presence, and then taken to a laboratory maintained by the Treasury Department after petitioner had been informed that the bottles would be retained at the laboratory, with the seals unbroken, for a

reasonable time so as to enable him to bring his own chemist, who would be permitted to watch the making of the Government's analyses and to make analyses of his own if he chose to do so. The State Liquor Authority could have held this to be what occurred, in finding that seven of petitioner's bottles contained a different brand of Scotch whisky from the brands described on the labels. That procedure would have rectified any unfairness in refusing petitioner's request that samples be left with him of the whiskies that were being seized, in order that he might have them analyzed also by his own chemist. In view of this circumstance, it is unnecessary to decide whether, or to what extent, failure to leave samples with petitioner for analysis would otherwise have impaired the probative force of the analyses of these liquors made in the Government's laboratory.

The determination of the State Liquor Authority suspending petitioner's license for fifteen days should be confirmed.

Callahan and Breitel, JJ. (concurring). While there may be some doubt as to whether the evidence was sufficient to warrant a finding that licensee permitted the premises to become disorderly, there is sufficient evidence to sustain the first charge; and as the Authority has power to impose the penalty, we confirm the determination.

Dore, J. P., and Cohn, J., concur with Van Voorhis, J.; Callahan and Breitel, JJ., concur, in opinion.

Determination unanimously confirmed, with $20 costs and disbursements to the respondents.